## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

KIMBERLY TEAGARDEN-HARD,
Individually and as the personal
Representative of THE ESTATE OF
JOHN JEFFREY HARD,
     Plaintiff,

Case No.: _____

v.

**JURY DEMAND**

KONINKELIJKE N.V.;
PHILIPS NORTH AMERICA LLC;
PHILIPS HOLDING USA, INC.; and
PHILIPS RS NORTH AMERICA LLC,
     Defendants.

_____/

## COMPLAINT

Plaintiff, KIMBERLY TEAGARDEN-HARD, individually, and as the

Personal Representative of the Estate of JOHN JEFFREY HARD, sues Defendants,

KONINKELIJKE N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS HOLDING

USA, INC.; and PHILIPS RS NORTH AMERICA LLC (collectively referred to as

"PHILIPS" or "DEFENDANTS") and alleges as follows:

### INTRODUCTION

1.    Defendants manufacture, market, sell, and distribute devices for home

respiratory and sleep care.

2.    Defendants manufacture, market, import, sell, and distribute a variety

of Continuous Positive Airway Pressure (CPAP) and Bilevel Positive Airway

Pressure (BiLevel PAP) devices for individuals diagnosed with obstructive sleep apnea ("OSA").

3.     Additionally, Defendants manufacture, market, import, sell, and distribute ventilator devices for individuals with respiratory conditions.

4.     The Decedent, JOHN JEFFREY HARD (hereinafter the "Decedent"), was prescribed, and subsequently purchased, one of the Defendants' devices, specifically a Dream Station Auto CPAP and Dream Station Core Pack, Serial No. H213816931111 (hereinafter the "Subject Device"), to treat his OSA.

5.     The Decedent used the Subject Device daily for several years.

6.     On May 4, 2021, the Decedent died of metastatic adenocarcinoma of the esophagus, a form of cancer that affects glandular tissues.

7.     On June 14, 2021, Defendants issued a recall notice for many of their CPAP and BiLevel PAP devices, as well as many of its ventilator devices.

8.     In its recall notice, Defendants indicated that there may be possible health risks associated with the sound abatement foam used in many of the recalled devices and informed patients using these affected devices of the potential risks from exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material.

9.    Defendants further notified individuals using the recalled devices exposure to the sound abatement foam could have possible toxic and carcinogenic effects and result in headache, irritation, inflammation, and respiratory issues.

10.    As a direct and proximate cause of the Subject Device which was manufactured, marketed, imported, sold, and distributed by the Defendants, Plaintiff has suffered serious damages, including the death of the Decedent.

## THE PARTIES

11.    At all times relevant, the Decedent was a resident of Santa Rosa Beach, Walton County, Florida.

12.    At all times relevant, Plaintiff, KIMBERLY TEAGARDEN-HARD, was a resident of Santa Rosa Beach, Walton County, Florida.

13.    At all times relevant, the ESTATE OF JOHN JEFFREY HARD was opened in Santa Rosa Beach, Walton County, Florida.

14.    At all times relevant, the Subject Device was used by the Decedent in Santa Rosa Beach, Walton County, Florida.

15.    At all times relevant Plaintiff and the Decedent were married.

16.    The Decedent was prescribed the Subject Device in Florida.

17.    At all times relevant KIMBERLY TEAGARDEN-HARD was and is the personal representative of the ESTATE OF JOHN JEFFREY HARD.

18.     Defendant, KONINKELIJKE N.V. (hereinafter "PHILIPS N.V."),  is a public limited liability company established under the laws of the Netherlands and having its principal executive offices at PHILIPS Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands.

19.     PHILIPS N.V. is the parent company of PHILIPS NA and PHILIPS RS.  PHILIPS N.V. can be served process via the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").

20.     Defendant, PHILIPS NORTH AMERICA LLC (hereinafter "PHILIPS N.A."), is a Delaware corporation with its principal place of business located at 222 Jacobs Street, 3rd Floor, Cambridge, Massachusetts 02141.

21.     PHILIPS N.A. is a wholly owned subsidiary of PHILIPS N.V.

22.     Upon information and belief PHILIPS N.A. manages the operation of PHILIPS N.V.'s various lines of business, including PHILIPS RS NORTH AMERICA, LLC (hereinafter "PHILIPS RS"), in North America.

23.     PHILIPS N.A. may be served through its registered agent Corporate Service Company, 1201 Hays Street, Tallahassee, FL 32301.

24.     Defendant, PHILIPS HOLDING USA, INC. (hereinafter "PHILIPS USA"),  is a Delaware corporation with its principal place of business of 222 Jacobs Street, 3rd Floor, Cambridge, Massachusetts 02141.

25.    PHILIPS USA is a holding company that is the sole member of Defendant PHILIPS N.A.

26.    PHILIPS USA may be served through its registered agent Corporate Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

27.    PHILIPS RS NORTH AMERICA, LLC (hereinafter "PHILIPS R.S.") is a Delaware corporation with its principal place of business 6501 Living Place, Pittsburg Pennsylvania, 15206.

28.    PHILIPS R.S. was formerly operated under the business name Respironics, Inc. ("Respironics"). Respironics was acquired by PHILIPS N.V. in 2008.

29.    PHILIPS R.S. may be served through its registered agent Corporate Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## JURISDICTION AND VENUE

30.    At all times relevant, Defendants were and are in the business of designing, manufacturing, marketing, promoting, advertising, and selling devices for the treatment of OSA, including the Subject Device which was used by the Decedent and which is the subject matter of this litigation.

31.    At all times relevant, Defendants were mere alter egos or instrumentalities of each other. There is such unity of interest and ownership between the Defendants that the separate personalities of their entities ceased to

exist. Defendants operated as a single entity enterprise, equally controlled each other's business affairs, comingled their assets and funds, disregarded corporate formalities, and used each other as a corporate shield to defeat justice, perpetuate fraud, and evade contractual and/or tort liability.

32.     At all times relevant, Defendants acted in concert while researching, developing, designing, manufacturing, selling, distributing, and marketing devices to treat OSA and respiratory failure, including the recalled Subject Device.

33.     At all times relevant, Defendants combined their property and labor in a joint venture for profit in the designing, manufacturing, marketing, promoting, advertising, and selling of devices for the treatment of OSA, including the Subject Device.

34.     At all times relevant, Defendants acted in all respects as agents or apparent agents of one another and, as such, are jointly liable to Plaintiff.

35.     Plaintiff is bringing this wrongful death action pursuant to <u>Florida Statutes § 768.21</u> *et. seq*.

36.     Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. As such, this Court has diversity jurisdiction pursuant to <u>28 U.S.C §1332</u>.

37.     Additionally, the damages Plaintiff has sustained as a result of Defendants' research, development, design, manufacture, sales, distribution, and

marketing of the Subject Device and Defendants' failure to warn of its serious, life-threatening risks, substantially exceed $75,000.00.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

38.    On or about June 14, 2021, Defendants announced a major recall (hereinafter the "recall") of millions of Bilevel Positive Airway ("BiPAP") and CPAP devices and ventilators (collectively referred to as "the recalled devices") and first notified the public of potential, serious health risks caused by the polyester-based polyurethane sound abatement foam ("PE-PUR foam") used in the design and manufacture of the recalled devices.

39.    Defendants notified the public that PE-PURE foam could degrade and break down, resulting in the release of toxic particles and volatile organic compounds ("VOCs") into the air pathway of the recalled devices, which a consumer could then inhale or ingest, suffering toxic or carcinogenic effects.

40.    On or about July 22, 2021, the United States Food and Drug Administration ("FDA") classified the recall as Class I, which indicates that use of the recalled devices may cause serious injuries or death.

41.    Defendants knew or should have known about the potential life-threatening health risks prior to the recall but failed to timely warn physician or patients of the hazards and risks associated with the use of the recalled devices.

42.     On or about February 21, 2018, the Decedent was prescribed, and subsequently purchased, the Subject Device, which was one of the recalled devices included in the June 14, 2021 recall.

43.     The Subject Device was purchased by the Decedent in the state of Florida.

44.     The Subject Device was used by the Decedent daily from 2018 until 2021 in the State of Florida.

45.     The Decedent continuously used the Subject Device from February of 2018 until early 2021.

46.     At all times relevant, the Decedent used the Subject Device for the purpose for which it was researched, developed, designed, manufactured, sold, and otherwise intended by the Defendants.

47.     As a direct and proximate result of the Defendants' wrongful conduct in designing, manufacturing, marketing, promoting, advertising, and selling the recalled devices, as well as failing to warn physicians or consumers, such as the Decedent, regarding the latent and foreseeable risks, the Decedent developed esophageal cancer resulting in his death on May 4, 2021.

48.     As a direct and proximate result of using the Subject Device, the Decedent was exposed to toxic and harmful substances, and suffered severe personal injuries and death, that would not have occurred but for the defective nature of the

Subject Device and Defendants' failure to warn the Decedent or his physicians of the serious health risks associated with the use of the Subject Device.

## COUNT 1 - STRICT LIABILITY FAILURE TO WARN AS TO PHILIPS N.V.

49.    Plaintiff hereby restates and realleges Paragraphs One (1) through Forty-Eight (48) as though fully set forth herein.

50.    At all relevant times, PHILIPS N.V. engaged in the research, development, design, manufacture, sales, distribution, and marketing of the recalled devices – including the Subject Device – which were defective and unreasonably dangerous to consumers, including the Decedent, because they did not contain adequate warnings or instructions concerning their dangerous characteristics.

51.    At the time PHILIPS N.V. researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the Subject Device into the stream of commerce, PHILIPS N.V. knew or should have known that the recalled devices – including the Subject Device – presented an unreasonable danger to users when used as intended and/or in a reasonably anticipated manner.

52.    Specifically, at all relevant times, PHILIPS N.V. knew or should have known that the recalled devices, including the Subject Device, posed a significant health risk because the PE-PUR sound abatement foam incorporated into the recalled devices may break down and cause the release of toxic and/or carcinogenic particles

and/or chemical emissions into a device's air pathway, which a consumer, such as the Decedent, could ingest or inhale, causing significant permanent injury or death.

53.    At all times relevant, PHILIPS N.V. knew or should have known that the recalled devices – including the Subject Device – created a significant risk of serious bodily injury or death to consumers, including the Decedent.

54.    At all relevant times, PHILIPS N.V. had a duty to warn unsuspecting consumers, including the Decedent and his medical providers, of the significant health risks associated with use of the recalled devices – including the Subject Device – caused by the potential breakdown of the PE-PUR sound abatement foam and the inherent risk of toxic exposure which could possibly result in significant, life-threatening injuries, including cancer.

55.    At all times relevant, PHILIPS N.V. had a duty to properly research, develop, design, manufacture, and distribute the Subject Device, which included providing proper warnings and taking such steps necessary to ensure the Subject Device did not cause consumers, like the Decedent, to suffer from unreasonable and dangerous risks.

56.    PHILIPS N.V., as a researcher, developer, designer, manufacturer, seller, distributor, and marketer of medical devices, is held to the knowledge of an expert in the field and had a continuing duty to warn consumers, including the Decedent, of the risks associated with using the Subject Device.

57.     PHILIPS N.V. had a duty to warn consumers, including the Decedent, of the risk of harm resulting from exposure to degraded PE-PUR foam and chemical emissions as a result of using the Subject Device.

58.     At all relevant times, PHILIPS N.V. should have provided proper warnings and/or instructions regarding the full and complete risk associated with use of the Subject Device.

59.     At all times relevant, PHILIPS N.V. failed and deliberately refused to investigate, study, test, promote the safety, or minimize the damage and dangers to those who would foreseeably use or be harmed by the Subject Device, including the Decedent.

60.     The Decedent used and was exposed to the device without knowledge of its dangerous characteristics.

61.     Despite PHILIPS N.V.'s obligation to strengthen warnings, PHILIPS N.V. instead actively concealed knowledge of the risks of use of the recalled devices, including risks from the integration of the PE – PUR foam incorporated in the recalled devices, including the Subject Device.

62.     At all times relevant, the Decedent used or was exposed to toxins or carcinogens from the Subject Device while using it for its intended purpose and without knowledge of its dangerous characteristics.

63.    The Decedent could not have readily discovered the defects and risks associated with the Subject Device prior to or at the time of using it, and relied upon the skill, superior knowledge, and judgment of PHILIPS N.V. to know about and disclose serious health risks associated with using the Subject Device.

64.    PHILIPS N.V. knew or should have known that failing to disseminate warnings or instructions regarding the risk of exposure to the degraded PE – PUR foam or the dangers of toxic exposure made the recalled devices – including the Subject Device – unfit  for ordinary, intended, and reasonably foreseeable use.

65.    The information PHILIPS N.V. did disseminate or communicate failed entirely to contain relevant or adequate warnings or precautions that would have been able to aid consumers, such as the Decedent, in using the recalled devices safely.

66.    Rather, PHILIPS N.V. disseminated information that was inaccurate, incomplete, false, misleading, and which failed to accurately communicate the risk of injury or death associated with the use of the Subject Device.

67.    Subsequent to April 26, 2021, PHILIPS N.V. suggested to its shareholders that its CPAP devices may potentially contain serious health hazards to consumers, but continued to sell those devices without providing consumers with further or complete warnings until the date of the eventual recall on June 14, 2021.

68.     PHILIPS N.V. knew or should have known of the potential risks from use of the recalled devices – including the Subject Device – and  downplayed or otherwise suppressed any information or research about the risks of dangers of the device to consumers, including the Decedent.

69.     PHILIPS N.V. is liable to Plaintiff for injuries caused by the Subject Device and for failure to provide adequate warnings, instructions, or relevant information and data regarding the risks associated with using the Subject Device.

70.     Had PHILIPS N.V. provided adequate warnings, instructions, relevant information, and data regarding the risks associated with the Subject Device, the Decedent could have purchased or used alternate devices for the treatment of OSA and avoided the risk of the development and progression of cancer.

71.     As a direct and proximate result of PHILIPS N.V. placing the Subject Device, which was defective, into the stream of commerce, the Decedent contracted esophageal cancer and died on May 4, 2021.

72.     Plaintiff, the wife of Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

73.     The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

74.     Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

75.     All of these damages are due to the conduct of the PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks a judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 2 - STRICT LIABILITY FAILURE TO WARN AS TO PHILIPS N.A.

76.     Plaintiff hereby restates and realleges Paragraphs One (1) through Seventy-Five (75) as though fully set forth herein.

77.     At all relevant times, PHILIPS N.A. engaged in the research, development, design, manufacture, sales, distribution, and marketing of the recalled devices – including the Subject Device – which were defective and unreasonably dangerous to consumers, including the Decedent, because they did not contain adequate warnings or instructions concerning their dangerous characteristics.

78.     At the time PHILIPS N.A. researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the Subject Device into the stream of commerce, PHILIPS N.A. knew or should have known

that the recalled devices – including the Subject Device – presented an unreasonable danger to users when used as intended and/or in a reasonably anticipated manner.

79. Specifically, at all relevant times, PHILIPS N.A. knew or should have known that the recalled devices, including the Subject Device, posed a significant health risk because the PE-PUR sound abatement foam incorporated into the recalled devices may break down and cause the release of toxic and/or carcinogenic particles and/or chemical emissions into a device's air pathway, which a consumer, such as the Decedent, could ingest or inhale, causing significant permanent injury or death.

80. At all times relevant, PHILIPS N.A. knew or should have known that the recalled devices – including the Subject Device – created a significant risk of serious bodily injury or death to consumers, including the Decedent.

81. At all relevant times, PHILIPS N.A. had a duty to warn unsuspecting consumers, including the Decedent and his medical providers, of the significant health risks associated with use of the recalled devices – including the Subject Device – caused by the potential breakdown of the PE-PUR sound abatement foam and the inherent risk of toxic exposure which could possibly result in significant, life-threatening injuries, including cancer.

82. At all times relevant, PHILIPS N.A. had a duty to properly research, develop, design, manufacture, and distribute the Subject Device, which included providing proper warnings and taking such steps necessary to ensure the Subject

Device did not cause consumers, like the Decedent, to suffer from unreasonable and dangerous risks.

83.    PHILIPS N.A., as a researcher, developer, designer, manufacturer, seller, distributor, and marketer of medical devices, is held to the knowledge of an expert in the field and had a continuing duty to warn consumers, including the Decedent, of the risks associated with using the Subject Device.

84.    PHILIPS N.A. had a duty to warn consumers, including the Decedent, of the risk of harm resulting from exposure to degraded PE-PUR foam and chemical emissions as a result of using the Subject Device.

85.    At all relevant times, PHILIPS N.A. should have provided proper warnings and/or instructions regarding the full and complete risk associated with use of the Subject Device.

86.    At all times relevant, PHILIPS N.A. failed and deliberately refused to investigate, study, test, promote the safety, or minimize the damage and dangers to those who would foreseeably use or be harmed by the Subject Device, including the Decedent.

87.    The Decedent used and was exposed to the device without knowledge of its dangerous characteristics.

88.    Despite PHILIPS N.A.'s obligation to strengthen warnings, PHILIPS N.A. instead actively concealed knowledge of the risks of use of the recalled devices,

including risks from the integration of the PE – PUR foam incorporated in the recalled devices, including the Subject Device.

89.    At all times relevant, the Decedent used or was exposed to toxins or carcinogens from the Subject Device while using it for its intended purpose and without knowledge of its dangerous characteristics.

90.    The Decedent could not have readily discovered the defects and risks associated with the Subject Device prior to or at the time of using it, and relied upon the skill, superior knowledge, and judgment of PHILIPS N.A. to know about and disclose serious health risks associated with using the Subject Device.

91.    PHILIPS N.A. knew or should have known that failing to disseminate warnings or instructions regarding the risk of exposure to the degraded PE – PUR foam or the dangers of toxic exposure made the recalled devices – including the Subject Device – unfit for ordinary, intended, and reasonably foreseeable use.

92.    The information PHILIPS N.A. did disseminate or communicate failed entirely to contain relevant or adequate warnings or precautions that would have been able to aid consumers, such as the Decedent, in using the recalled devices safely.

93.    Rather, PHILIPS N.A. disseminated information that was inaccurate, incomplete, false, misleading, and which failed to accurately communicate the risk of injury or death associated with the use of the Subject Device.

94.    Subsequent to April 26, 2021, PHILIPS N.A. suggested to its shareholders that its CPAP devices may potentially contain serious health hazards to consumers, but continued to sell those devices without providing consumers with further or complete warnings until the date of the eventual recall on June 14, 2021.

95.    PHILIPS N.A. knew or should have known of the potential risks from use of the recalled devices – including the Subject Device – and downplayed or otherwise suppressed any information or research about the risks of dangers of the device to consumers, including the Decedent.

96.    PHILIPS N.A. is liable to Plaintiff for injuries caused by the Subject Device and for failure to provide adequate warnings, instructions, or relevant information and data regarding the risks associated with using the Subject Device.

97.    Had PHILIPS N.A. provided adequate warnings, instructions, relevant information, and data regarding the risks associated with the Subject Device, the Decedent could have purchased or used alternate devices for the treatment of OSA and avoided the risk of the development and progression of cancer.

98.    As a direct and proximate result of PHILIPS N.A. placing the Subject Device, which was defective, into the stream of commerce, the Decedent contracted esophageal cancer and died on May 4, 2021.

99.     Plaintiff, the wife of Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

100.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

101.    Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

102.    All of these damages are due to the conduct of the PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks a judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 3 - STRICT LIABILITY FAILURE TO WARN AS TO PHILIPS USA

103.    Plaintiff hereby restates and realleges Paragraphs One (1) through One Hundred and Two (102) as though fully set forth herein.

104.    At all relevant times, PHILIPS USA engaged in the research, development, design, manufacture, sales, distribution, and marketing of the recalled devices – including the Subject Device – which were defective and unreasonably

dangerous to consumers, including the Decedent, because they did not contain adequate warnings or instructions concerning their dangerous characteristics.

105.  At the time PHILIPS USA researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the Subject Device into the stream of commerce, PHILIPS USA knew or should have known that the recalled devices – including the Subject Device – presented an unreasonable danger to users when used as intended and/or in a reasonably anticipated manner.

106.  Specifically, at all relevant times, PHILIPS USA knew or should have known that the recalled devices, including the Subject Device, posed a significant health risk because the PE-PUR sound abatement foam incorporated into the recalled devices may break down and cause the release of toxic and/or carcinogenic particles and/or chemical emissions into a device's air pathway, which a consumer, such as the Decedent, could ingest or inhale, causing significant permanent injury or death.

107.  At all times relevant, PHILIPS USA knew or should have known that the recalled devices – including the Subject Device – created a significant risk of serious bodily injury or death to consumers, including the Decedent.

108.  At all relevant times, PHILIPS USA had a duty to warn unsuspecting consumers, including the Decedent and his medical providers, of the significant health risks associated with use of the recalled devices – including the Subject Device – caused by the potential breakdown of the PE-PUR sound abatement foam

and the inherent risk of toxic exposure which could possibly result in significant, life-threatening injuries, including cancer.

109.   At all times relevant, PHILIPS USA had a duty to properly research, develop, design, manufacture, and distribute the Subject Device, which included providing proper warnings and taking such steps necessary to ensure the Subject Device did not cause consumers, like the Decedent, to suffer from unreasonable and dangerous risks.

110.   PHILIPS USA, as a researcher, developer, designer, manufacturer, seller, distributor, and marketer of medical devices, is held to the knowledge of an expert in the field and had a continuing duty to warn consumers, including the Decedent, of the risks associated with using the Subject Device.

111.   PHILIPS USA had a duty to warn consumers, including the Decedent, of the risk of harm resulting from exposure to degraded PE-PUR foam and chemical emissions as a result of using the Subject Device.

112.   At all relevant times, PHILIPS USA should have provided proper warnings and/or instructions regarding the full and complete risk associated with use of the Subject Device.

113.   At all times relevant, PHILIPS USA failed and deliberately refused to investigate, study, test, promote the safety, or minimize the damage and dangers to

those who would foreseeably use or be harmed by the Subject Device, including the Decedent.

114.    The Decedent used and was exposed to the device without knowledge of its dangerous characteristics.

115.    Despite PHILIPS USA's obligation to strengthen warnings, PHILIPS USA instead actively concealed knowledge of the risks of use of the recalled devices, including risks from the integration of the PE – PUR foam incorporated in the recalled devices, including the Subject Device.

116.    At all times relevant, the Decedent used or was exposed to toxins or carcinogens from the Subject Device while using it for its intended purpose and without knowledge of its dangerous characteristics.

117.    The Decedent could not have readily discovered the defects and risks associated with the Subject Device prior to or at the time of using it, and relied upon the skill, superior knowledge, and judgment of PHILIPS USA to know about and disclose serious health risks associated with using the Subject Device.

118.    PHILIPS USA knew or should have known that failing to disseminate warnings or instructions regarding the risk of exposure to the degraded PE – PUR foam or the dangers of toxic exposure made the recalled devices – including the Subject Device – unfit  for ordinary, intended, and reasonably foreseeable use.

119.   The information PHILIPS USA did disseminate or communicate failed entirely to contain relevant or adequate warnings or precautions that would have been able to aid consumers, such as the Decedent, in using the recalled devices safely.

120.   Rather, PHILIPS USA disseminated information that was inaccurate, incomplete, false, misleading, and which failed to accurately communicate the risk of injury or death associated with the use of the Subject Device.

121.  Subsequent to April 26, 2021, PHILIPS USA suggested to its shareholders that its CPAP devices may potentially contain serious health hazards to consumers, but continued to sell those devices without providing consumers with further or complete warnings until the date of the eventual recall on June 14, 2021.

122.   PHILIPS USA knew or should have known of the potential risks from use of the recalled devices – including the Subject Device – and  downplayed or otherwise suppressed any information or research about the risks of dangers of the device to consumers, including the Decedent.

123.   PHILIPS USA is liable to Plaintiff for injuries caused by the Subject Device and for failure to provide adequate warnings, instructions, or relevant information and data regarding the risks associated with using the Subject Device.

124.   Had PHILIPS USA provided adequate warnings, instructions, relevant information, and data regarding the risks associated with the Subject Device, the

Decedent could have purchased or used alternate devices for the treatment of OSA and avoided the risk of the development and progression of cancer.

125.    As a direct and proximate result of PHILIPS USA placing the Subject Device, which was defective, into the stream of commerce, the Decedent contracted esophageal cancer and died on May 4, 2021.

126.    Plaintiff, the wife of Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

127.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

128.    Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

129.    All of these damages are due to the conduct of the PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks a judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 4 - STRICT LIABILITY FAILURE TO WARN AS TO PHILIPS R.S.

130.   Plaintiff hereby restates and realleges Paragraphs One (1) through One Hundred and Twenty-Nine (129) as though fully set forth herein.

131.   At all relevant times, PHILIPS R.S. engaged in the research, development, design, manufacture, sales, distribution, and marketing of the recalled devices – including the Subject Device – which were defective and unreasonably dangerous to consumers, including the Decedent, because they did not contain adequate warnings or instructions concerning their dangerous characteristics.

132.   At the time PHILIPS R.S. researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the Subject Device into the stream of commerce, PHILIPS R.S. knew or should have known that the recalled devices – including the Subject Device – presented an unreasonable danger to users when used as intended and/or in a reasonably anticipated manner.

133.   Specifically, at all relevant times, PHILIPS R.S. knew or should have known that the recalled devices, including the Subject Device, posed a significant health risk because the PE-PUR sound abatement foam incorporated into the recalled devices may break down and cause the release of toxic and/or carcinogenic particles and/or chemical emissions into a device's air pathway, which a consumer, such as the Decedent, could ingest or inhale, causing significant permanent injury or death.

134.   At all times relevant, PHILIPS R.S. knew or should have known that the recalled devices – including the Subject Device – created a significant risk of serious bodily injury or death to consumers, including the Decedent.

135.   At all relevant times, PHILIPS R.S. had a duty to warn unsuspecting consumers, including the Decedent and his medical providers, of the significant health risks associated with use of the recalled devices – including the Subject Device – caused by the potential breakdown of the PE-PUR sound abatement foam and the inherent risk of toxic exposure which could possibly result in significant, life-threatening injuries, including cancer.

136.   At all times relevant, PHILIPS R.S. had a duty to properly research, develop, design, manufacture, and distribute the Subject Device, which included providing proper warnings and taking such steps necessary to ensure the Subject Device did not cause consumers, like the Decedent, to suffer from unreasonable and dangerous risks.

137.   PHILIPS R.S., as a researcher, developer, designer, manufacturer, seller, distributor, and marketer of medical devices, is held to the knowledge of an expert in the field and had a continuing duty to warn consumers, including the Decedent, of the risks associated with using the Subject Device.

138.    PHILIPS R.S. had a duty to warn consumers, including the Decedent, of the risk of harm resulting from exposure to degraded PE-PUR foam and chemical emissions as a result of using the Subject Device.

139.    At all relevant times, PHILIPS R.S. should have provided proper warnings and/or instructions regarding the full and complete risk associated with use of the Subject Device.

140.    At all times relevant, PHILIPS R.S. failed and deliberately refused to investigate, study, test, promote the safety, or minimize the damage and dangers to those who would foreseeably use or be harmed by the Subject Device, including the Decedent.

141.    The Decedent used and was exposed to the device without knowledge of its dangerous characteristics.

142.    Despite PHILIPS R.S.'s obligation to strengthen warnings, PHILIPS R.S. instead actively concealed knowledge of the risks of use of the recalled devices, including risks from the integration of the PE – PUR foam incorporated in the recalled devices, including the Subject Device.

143.    At all times relevant, the Decedent used or was exposed to toxins or carcinogens from the Subject Device while using it for its intended purpose and without knowledge of its dangerous characteristics.

144.   The Decedent could not have readily discovered the defects and risks associated with the Subject Device prior to or at the time of using it, and relied upon the skill, superior knowledge, and judgment of PHILIPS R.S. to know about and disclose serious health risks associated with using the Subject Device.

145.   PHILIPS R.S. knew or should have known that failing to disseminate warnings or instructions regarding the risk of exposure to the degraded PE – PUR foam or the dangers of toxic exposure made the recalled devices – including the Subject Device – unfit  for ordinary, intended, and reasonably foreseeable use.

146.   The information PHILIPS R.S. did disseminate or communicate failed entirely to contain relevant or adequate warnings or precautions that would have been able to aid consumers, such as the Decedent, in using the recalled devices safely.

147.   Rather, PHILIPS R.S. disseminated information that was inaccurate, incomplete, false, misleading, and which failed to accurately communicate the risk of injury or death associated with the use of the Subject Device.

148.   Subsequent to April 26, 2021, PHILIPS R.S. suggested to its shareholders that its CPAP devices may potentially contain serious health hazards to consumers, but continued to sell those devices without providing consumers with further or complete warnings until the date of the eventual recall on June 14, 2021.

149.   PHILIPS R.S. knew or should have known of the potential risks from use of the recalled devices – including the Subject Device – and downplayed or otherwise suppressed any information or research about the risks of dangers of the device to consumers, including the Decedent.

150.   PHILIPS R.S. is liable to Plaintiff for injuries caused by the Subject Device and for failure to provide adequate warnings, instructions, or relevant information and data regarding the risks associated with using the Subject Device.

151.   Had PHILIPS R.S. provided adequate warnings, instructions, relevant information, and data regarding the risks associated with the Subject Device, the Decedent could have purchased or used alternate devices for the treatment of OSA and avoided the risk of the development and progression of cancer.

152.   As a direct and proximate result of PHILIPS R.S. placing the Subject Device, which was defective, into the stream of commerce, the Decedent contracted esophageal cancer and died on May 4, 2021.

153.   Plaintiff, the wife of Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

154.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

155.   Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

156.   All of these damages are due to the conduct of the PHILIPS R.S. as set forth above.

**WHEREFORE**, Plaintiff seeks a judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 5 – STRICT LIABILITY DESIGN DEFECT AS TO PHILIPS N.V.

157.   Plaintiff hereby restates and realleges Paragraphs One (1) through One Hundred and Fifty-Six (156) as though fully set forth herein.

158.   This is an action against PHILIPS N.V. for strict liability as a result of a design defect with respect to the Subject Device.

159.   The Subject Device was inherently dangerous, defective, unfit, and unsafe for its intended and reasonably foreseeable use.

160.   The Subject Device does not meet or perform to the standards of patients and their healthcare providers.

161.   The manner in which the design of the Subject Device is defective includes, but is not limited to, the incorporation and the use of PE–PUR foam which was unreasonably dangerous and defective, and which resulted in toxic and

carcinogenic emissions and the ingestion and inhalation of degraded PE- PURE foam particles.

162.    The ingestion and inhalation of these toxic particles and emissions has toxic and carcinogenic affects, including headaches, irritation, inflammation, respiratory issues, and the possible development of cancer.

163.    The Subject Device used by the Decedent was defective in design and its risk of harm exceeded any claimed benefit.

164.    The device did not perform as an ordinary consumer would expect.

165.    The inherent risks, hazards, and dangers associated with the design of the Subject Device, specifically the incorporation of PE-PUR foam in such a manner that exposes consumers, such as the Decedent, to the ingestion or inhalation of degraded PE-PUR foam particles or chemical emissions, rendered the Subject Device unreasonably dangerous.

166.    Accordingly, the design of the Subject Device rendered it not reasonably fit, suitable, or safe for its intended purpose.

167.    Neither the Decedent, his physicians, or his healthcare providers could have, by the exercise of reasonable care, discovered the defective condition of the Subject Device or perceived its unreasonable dangers prior to the Decedent using the Subject Device.

168.    There are other similar CPAP devices that incorporate PE pure foam for sound abatement purposes which did not result in the ingestion or inhalation of toxic foam particulates or chemical emissions.

169.    Furthermore, there are other CPAP devices which do not incorporate PE-PUR foam.

170.    Safer alternative devices from other manufacturers are available which did not suffer from the defects set forth herein and did not pose an unreasonable risk of harm.

171.    As a result of the foregoing design defect, PHILIPS N.V. created health and safety hazards for consumers, including the Decedent, that were far more significant and devastating than the risk posed by other products and procedures available to treat the corresponding medical conditions and which far outweighed the utility of the Subject Device.

172.    The risk-benefit profile of the Subject Device was unreasonable, and PHILIPS N.V. should have had stronger and clearer warnings or should not have sold the Subject Device in the market.

173.    PHILIPS N.V. intentionally or recklessly designed the Subject Device with wanton and willful disregard for the rights and health of consumers, including the Decedent, and, with malice, placed their economic interests above the health and safety of consumers, including the Decedent.

174. As a proximate result of PHILIPS N.V.'s defective design of the Subject Device, the Decedent contracted esophageal cancer and died May 4, 2021.

175. Plaintiff, the wife of Decedent has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

176. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

177. Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

178. All of these damages are due to the conduct of the PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. for amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 6 – STRICT LIABILITY DESIGN DEFECT AS TO PHILIPS N.A.

179. Plaintiff hereby restates and realleges Paragraphs One (1) through One Hundred and Seventy-Eight (178) as though fully set forth herein.

180.   This is an action against PHILIPS N.A. for strict liability as a result of a design defect with respect to the Subject Device.

181.   The Subject Device was inherently dangerous, defective, unfit, and unsafe for its intended and reasonably foreseeable use.

182.   The Subject Device does not meet or perform to the standards of patients and their healthcare providers.

183.   The manner in which the design of the Subject Device is defective includes, but is not limited to, the incorporation and the use of PE–PUR foam which was unreasonably dangerous and defective, and which resulted in toxic and carcinogenic emissions and the ingestion and inhalation of degraded PE- PURE foam particles.

184.   The ingestion and inhalation of these toxic particles and emissions has toxic and carcinogenic affects, including headaches, irritation, inflammation, respiratory issues, and the possible development of cancer.

185.   The Subject Device used by the Decedent was defective in design and its risk of harm exceeded any claimed benefit.

186.   The device did not perform as an ordinary consumer would expect.

187.   The inherent risks, hazards, and dangers associated with the design of the Subject Device, specifically the incorporation of PE-PUR foam in such a manner that exposes consumers, such as the Decedent, to the ingestion or inhalation of

degraded PE-PUR foam particles or chemical emissions, rendered the Subject Device unreasonably dangerous.

188.    Accordingly, the design of the Subject Device rendered it not reasonably fit, suitable, or safe for its intended purpose.

189.    Neither the Decedent, his physicians, or his healthcare providers could have, by the exercise of reasonable care, discovered the defective condition of the Subject Device or perceived its unreasonable dangers prior to the Decedent using the Subject Device.

190.    There are other similar CPAP devices that incorporate PE pure foam for sound abatement purposes which did not result in the ingestion or inhalation of toxic foam particulates or chemical emissions.

191.    Furthermore, there are other CPAP devices which do not incorporate PE-PUR foam.

192.    Safer alternative devices from other manufacturers are available which did not suffer from the defects set forth herein and did not pose an unreasonable risk of harm.

193.    As a result of the foregoing design defect, PHILIPS N.A. created health and safety hazards for consumers, including the Decedent, that were far more significant and devastating than the risk posed by other products and procedures

available to treat the corresponding medical conditions and which far outweighed the utility of the Subject Device.

194.    The risk-benefit profile of the Subject Device was unreasonable, and PHILIPS N.A. should have had stronger and clearer warnings or should not have sold the Subject Device in the market.

195.    PHILIPS N.A. intentionally or recklessly designed the Subject Device with wanton and willful disregard for the rights and health of consumers, including the Decedent, and, with malice, placed their economic interests above the health and safety of consumers, including the Decedent.

196.    As a proximate result of PHILIPS N.A.'s defective design of the Subject Device, the Decedent contracted esophageal cancer and died May 4, 2021.

197.    Plaintiff, the wife of Decedent has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

198.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

199.    Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

200.   All of these damages are due to the conduct of the PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. for amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 7 – STRICT LIABILITY DESIGN DEFECT AS TO PHILIPS USA

201.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred (200) as though fully set forth herein.

202.   This is an action against PHILIPS USA for strict liability as a result of a design defect with respect to the Subject Device.

203.   The Subject Device was inherently dangerous, defective, unfit, and unsafe for its intended and reasonably foreseeable use.

204.   The Subject Device does not meet or perform to the standards of patients and their healthcare providers.

205.   The manner in which the design of the Subject Device is defective includes, but is not limited to, the incorporation and the use of PE–PUR foam which was unreasonably dangerous and defective, and which resulted in toxic and carcinogenic emissions and the ingestion and inhalation of degraded PE- PURE foam particles.

206.    The ingestion and inhalation of these toxic particles and emissions has toxic and carcinogenic affects, including headaches, irritation, inflammation, respiratory issues, and the possible development of cancer.

207.    The Subject Device used by the Decedent was defective in design and its risk of harm exceeded any claimed benefit.

208.    The device did not perform as an ordinary consumer would expect.

209.    The inherent risks, hazards, and dangers associated with the design of the Subject Device, specifically the incorporation of PE-PUR foam in such a manner that exposes consumers, such as the Decedent, to the ingestion or inhalation of degraded PE-PUR foam particles or chemical emissions, rendered the Subject Device unreasonably dangerous.

210.    Accordingly, the design of the Subject Device rendered it not reasonably fit, suitable, or safe for its intended purpose.

211.    Neither the Decedent, his physicians, or his healthcare providers could have, by the exercise of reasonable care, discovered the defective condition of the Subject Device or perceived its unreasonable dangers prior to the Decedent using the Subject Device.

212.    There are other similar CPAP devices that incorporate PE pure foam for sound abatement purposes which did not result in the ingestion or inhalation of toxic foam particulates or chemical emissions.

213.    Furthermore, there are other CPAP devices which do not incorporate PE-PUR foam.

214.    Safer alternative devices from other manufacturers are available which did not suffer from the defects set forth herein and did not pose an unreasonable risk of harm.

215.    As a result of the foregoing design defect, PHILIPS USA created health and safety hazards for consumers, including the Decedent, that were far more significant and devastating than the risk posed by other products and procedures available to treat the corresponding medical conditions and which far outweighed the utility of the Subject Device.

216.    The risk-benefit profile of the Subject Device was unreasonable, and PHILIPS USA should have had stronger and clearer warnings or should not have sold the Subject Device in the market.

217.    PHILIPS USA intentionally or recklessly designed the Subject Device with wanton and willful disregard for the rights and health of consumers, including the Decedent, and, with malice, placed their economic interests above the health and safety of consumers, including the Decedent.

218.    As a proximate result of PHILIPS USA's defective design of the Subject Device, the Decedent contracted esophageal cancer and died May 4, 2021.

219. Plaintiff, the wife of Decedent has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

220. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he contracted cancer until the date he died.

221. Further, Plaintiff has incurred funeral expenses for the death of the Decedent.

222. All of these damages are due to the conduct of the PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. for amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 8 – NEGLIGENT FAILURE TO WARN AS TO PHILIPS N.V.

223. Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Twenty-Two (222) as though fully set forth herein.

224. PHILIPS N.V. owed Decedent a duty of care to warn of any risk associated with the Subject Device.

225.    PHILIPS N.V. knew or should have known of the true risk associated with the Subject Device, but failed to warn consumers, including the Decedent, his physician, and his healthcare providers.

226.    PHILIPS N.V.'s negligent breach of their duty to warn caused the Decedent to develop the esophageal cancer which eventually resulted in his death on May 4, 2021.

227.    The Decedent would not have chosen, purchased, paid for, or utilized the Subject Device if he had known of the defects and the risks associated with the use of the Subject Device.

228.    As a proximate result of PHILIPS N.V. negligently failing to warn the Decedent of the risks associated with the use of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

229.    Plaintiff, the wife of Decedent, has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

230.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

231.    Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

232.   All aforementioned damages are due to the conduct of PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 9 – NEGLIGENT FAILURE TO WARN AS TO PHILIPS N.A.

233.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Thirty-Two (232) as though fully set forth herein.

234.   PHILIPS N.A. owed Decedent a duty of care to warn of any risk associated with the Subject Device.

235.   PHILIPS N.A. knew or should have known of the true risk associated with the Subject Device, but failed to warn consumers, including the Decedent, his physician, and his healthcare providers.

236.   PHILIPS N.A.'s negligent breach of their duty to warn caused the Decedent to develop the esophageal cancer which eventually resulted in his death on May 4, 2021.

237.   The Decedent would not have chosen, purchased, paid for, or utilized the Subject Device if he had known of the defects and the risks associated with the use of the Subject Device.

238.   As a proximate result of PHILIPS N.A. negligently failing to warn the Decedent of the risks associated with the use of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

239.   Plaintiff, the wife of Decedent, has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

240.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

241.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

242.   All aforementioned damages are due to the conduct of PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 10 – NEGLIGENT FAILURE TO WARN AS TO PHILIPS USA

243.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Forty-Two (242) as though fully set forth herein.

244.   PHILIPS USA owed Decedent a duty of care to warn of any risk associated with the Subject Device.

245.   PHILIPS USA knew or should have known of the true risk associated with the Subject Device, but failed to warn consumers, including the Decedent, his physician, and his healthcare providers.

246.   PHILIPS USA's negligent breach of their duty to warn caused the Decedent to develop the esophageal cancer which eventually resulted in his death on May 4, 2021.

247.   The Decedent would not have chosen, purchased, paid for, or utilized the Subject Device if he had known of the defects and the risks associated with the use of the Subject Device.

248.   As a proximate result of PHILIPS USA negligently failing to warn the Decedent of the risks associated with the use of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

249.   Plaintiff, the wife of Decedent, has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

250.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

251.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

252.   All aforementioned damages are due to the conduct of PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 11 – NEGLIGENT FAILURE TO WARN AS TO PHILIPS R.S

253.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Fifty-Two (252) as though fully set forth herein.

254.   PHILIPS R.S. owed Decedent a duty of care to warn of any risk associated with the Subject Device.

255.   PHILIPS R.S. knew or should have known of the true risk associated with the Subject Device, but failed to warn consumers, including the Decedent, his physician, and his healthcare providers.

256.   PHILIPS R.S.'s negligent breach of their duty to warn caused the Decedent to develop the esophageal cancer which eventually resulted in his death on May 4, 2021.

257.  The Decedent would not have chosen, purchased, paid for, or utilized the Subject Device if he had known of the defects and the risks associated with the use of the Subject Device.

258.  As a proximate result of PHILIPS R.S. negligently failing to warn the Decedent of the risks associated with the use of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

259.  Plaintiff, the wife of Decedent, has lost care, comfort, consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

260.  The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

261.  Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

262.  All aforementioned damages are due to the conduct of PHILIPS R.S. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 12 – NEGLIGENT DESIGN DEFECT AS TO PHILIPS N.V.

263.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Sixty-Two (262) as though fully set forth herein.

264.   PHILIPS N.V. had a duty to exercise reasonable care in the design and manufacture of the Subject Device in a manner that ensured it was not dangerous, harmful, or injurious, and that it did not pose an unreasonable risk to consumers, including the Decedent.

265.   PHILIPS N.V. breached its duty by failing to use reasonable care in the design of the Subject Device, specifically the incorporation of PE – PUR foam into the design.

266.   Over time, PE – PUR foam degrades and breaks down, causing the emission of chemical particulates which, if ingested or inhaled, result in adverse short- and long-term health consequences, including, but not limited to, headaches, inflammation, irritation of the eyes, skin, and respiratory tract, respiratory distress, asthma, nausea, vomiting, and cancer.

267.   The incorporation of PE – PUR foam into the design of the Subject Device ensured that these hazardous chemical particulates were placed directly into the bodies of consumers, like the Decedent.

268.    PHILIPS N.V. knew or should have known of the adverse consequences that could result from use of the Subject Device rendered it not reasonably fit, suitable, or safe for its particular purpose.

269.    PHILIPS N.V. breached its duty when it failed to use commercially feasible alternative designs to minimize the aforementioned harms, including, but not limited to, designs which do not incorporate PE – PUR foam.

270.    The dangers of the Subject Device outweigh the benefits and render the Subject Device unreasonably dangerous.

271.    There were similar devices which do not incorporate PE – PUR foam at all or in a manner which subjects the foam to degradation.

272.    Safer, alternative devices from other manufacturers were available which did not have the same unreasonable risk of harm posed by the Subject Device.

273.    The risk-benefit profile of the Subject Device was unreasonable, and the Subject Device should have had stronger and clearer warnings or should not have been sold on the market.

274.    As a proximate result of PHILIPS N.V.'s negligence in the design of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

275.   Plaintiff, the wife of the Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

276.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

277.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

278.   All of the aforementioned damages are due to the conduct of PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

### COUNT 13 – NEGLIGENT DESIGN DEFECT AS TO PHILIPS N.A.

279.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Seventy-Eight (278) as though fully set forth herein.

280.   PHILIPS N.A. had a duty to exercise reasonable care in the design and manufacture of the Subject Device in a manner that ensured it was not dangerous,

harmful, or injurious, and that it did not pose an unreasonable risk to consumers, including the Decedent.

281.    PHILIPS N.A. breached its duty by failing to use reasonable care in the design of the Subject Device, specifically the incorporation of PE – PUR foam into the design.

282.    Over time, PE – PUR foam degrades and breaks down, causing the emission of chemical particulates which, if ingested or inhaled, result in adverse short- and long-term health consequences, including, but not limited to, headaches, inflammation, irritation of the eyes, skin, and respiratory tract, respiratory distress, asthma, nausea, vomiting, and cancer.

283.    The incorporation of PE – PUR foam into the design of the Subject Device ensured that these hazardous chemical particulates were placed directly into the bodies of consumers, like the Decedent.

284.    PHILIPS N.A. knew or should have known of the adverse consequences that could result from use of the Subject Device rendered it not reasonably fit, suitable, or safe for its particular purpose.

285.    PHILIPS N.A. breached its duty when it failed to use commercially feasible alternative designs to minimize the aforementioned harms, including, but not limited to, designs which do not incorporate PE – PUR foam.

286.    The dangers of the Subject Device outweigh the benefits and render the Subject Device unreasonably dangerous.

287.    There were similar devices which do not incorporate PE – PUR foam at all or in a manner which subjects the foam to degradation.

288.    Safer, alternative devices from other manufacturers were available which did not have the same unreasonable risk of harm posed by the Subject Device.

289.    The risk-benefit profile of the Subject Device was unreasonable, and the Subject Device should have had stronger and clearer warnings or should not have been sold on the market.

290.    As a proximate result of PHILIPS N.A.'s negligence in the design of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

291.    Plaintiff, the wife of the Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

292.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

293.    Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

294.   All of the aforementioned damages are due to the conduct of PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 14 – NEGLIGENT DESIGN DEFECT AS TO PHILIPS USA

295.   Plaintiff hereby restates and realleges Paragraphs One (1) through Two Hundred and Ninety-Four (294) as though fully set forth herein.

296.   PHILIPS USA had a duty to exercise reasonable care in the design and manufacture of the Subject Device in a manner that ensured it was not dangerous, harmful, or injurious, and that it did not pose an unreasonable risk to consumers, including the Decedent.

297.   PHILIPS USA breached its duty by failing to use reasonable care in the design of the Subject Device, specifically the incorporation of PE – PUR foam into the design.

298.   Over time, PE – PUR foam degrades and breaks down, causing the emission of chemical particulates which, if ingested or inhaled, result in adverse short- and long-term health consequences, including, but not limited to, headaches,

inflammation, irritation of the eyes, skin, and respiratory tract, respiratory distress, asthma, nausea, vomiting, and cancer.

299.    The incorporation of PE – PUR foam into the design of the Subject Device ensured that these hazardous chemical particulates were placed directly into the bodies of consumers, like the Decedent.

300.    PHILIPS USA knew or should have known of the adverse consequences that could result from use of the Subject Device rendered it not reasonably fit, suitable, or safe for its particular purpose.

301.    PHILIPS USA breached its duty when it failed to use commercially feasible alternative designs to minimize the aforementioned harms, including, but not limited to, designs which do not incorporate PE – PUR foam.

302.    The dangers of the Subject Device outweigh the benefits and render the Subject Device unreasonably dangerous.

303.    There were similar devices which do not incorporate PE – PUR foam at all or in a manner which subjects the foam to degradation.

304.    Safer, alternative devices from other manufacturers were available which did not have the same unreasonable risk of harm posed by the Subject Device.

305.    The risk-benefit profile of the Subject Device was unreasonable, and the Subject Device should have had stronger and clearer warnings or should not have been sold on the market.

306.   As a proximate result of PHILIPS USA's negligence in the design of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

307.   Plaintiff, the wife of the Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

308.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

309.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

310.   All of the aforementioned damages are due to the conduct of PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 15 – NEGLIGENT DESIGN DEFECT AS TO PHILIPS R.S

311.   Plaintiff hereby restates and realleges Paragraphs One (1) through Three Hundred and Ten (310) as though fully set forth herein.

312.   PHILIPS R.S. had a duty to exercise reasonable care in the design and manufacture of the Subject Device in a manner that ensured it was not dangerous, harmful, or injurious, and that it did not pose an unreasonable risk to consumers, including the Decedent.

313.   PHILIPS R.S. breached its duty by failing to use reasonable care in the design of the Subject Device, specifically the incorporation of PE – PUR foam into the design.

314.   Over time, PE – PUR foam degrades and breaks down, causing the emission of chemical particulates which, if ingested or inhaled, result in adverse short- and long-term health consequences, including, but not limited to, headaches, inflammation, irritation of the eyes, skin, and respiratory tract, respiratory distress, asthma, nausea, vomiting, and cancer.

315.   The incorporation of PE – PUR foam into the design of the Subject Device ensured that these hazardous chemical particulates were placed directly into the bodies of consumers, like the Decedent.

316.   PHILIPS R.S. knew or should have known of the adverse consequences that could result from use of the Subject Device rendered it not reasonably fit, suitable, or safe for its particular purpose.

317.    PHILIPS R.S. breached its duty when it failed to use commercially feasible alternative designs to minimize the aforementioned harms, including, but not limited to, designs which do not incorporate PE – PUR foam.

318.    The dangers of the Subject Device outweigh the benefits and render the Subject Device unreasonably dangerous.

319.    There were similar devices which do not incorporate PE – PUR foam at all or in a manner which subjects the foam to degradation.

320.    Safer, alternative devices from other manufacturers were available which did not have the same unreasonable risk of harm posed by the Subject Device.

321.    The risk-benefit profile of the Subject Device was unreasonable, and the Subject Device should have had stronger and clearer warnings or should not have been sold on the market.

322.    As a proximate result of PHILIPS R.S.'s negligence in the design of the Subject Device, the Decedent developed esophageal cancer and died on May 4, 2021.

323.    Plaintiff, the wife of the Decedent, has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

324. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

325. Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

326. All of the aforementioned damages are due to the conduct of PHILIPS R.S. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 16 – BREACH OF EXPRESS WARRANTY AS TO PHILIPS N.V.

327. Plaintiff hereby restates and realleges Paragraphs One (1) through Three Hundred and Twenty-Six (326) as though fully set forth herein.

328. At all relevant times, PHILIPS N.V. intended that the Subject Device be used in the manner that the Decedent, in fact, used it, and expressly warranted that it was safe and fit for use by Decedent, that it was of merchantable quality, that the risks were minimal comparable to other similar or substantially similar devices, and it was adequately tested and fit for its intended use.

329.  At all relevant times, PHILIPS N.V. was aware that consumers, including the Decedent, would use the Subject Device, and as a result, would be in privity with PHILIPS N.V.

330.  The Subject Device was expected to reach, and did, in fact, reach the Decedent without substantial change in the condition in which it was manufactured and sold by PHILIPS N.V.

331.  PHILIPS N.V. warranted that Subject Device would be free from defects of workmanship and materials and would perform in accordance with product specifications "for a period of two years from the date of sale."

332.  PHILIPS N.V. breached the express warranty upon the sale and distribution of the Subject Device.

333.  At the point of sale, the Subject Device, while appearing normal, contained immediate latent defects, as set forth herein, rendering the Subject Device unsuitable and unsafe for use by humans.

334.  In reliance upon PHILIPS N.V.'s express warranty, the Decedent used the Subject Device as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by PHILIPS N.V.

335.  At the time of making such express warranties, PHILIPS N.V. knew or should have known that the Subject Device was not safe and had numerous defects,

about many of which PHILIPS N.V. did not actually warn the public, making the Subject Device unreasonably unsafe for its intended purpose.

336. The Decedent, his physicians, and his healthcare providers relied on the representation in the warranties of PHILIPS N.V. in connection with the use, recommendation, description, or prescription of the Subject Device.

337. Had the Decedent known the device was unsafe for use, he would not have purchased or used it.

338. At the time of purchase and throughout his use of the Subject Device, the Decedent reasonably expected that the Subject Device was safe for its ordinary and intended use.

339. PHILIPS N.V. breached its express warranty to the Decedent, as the Subject Device was not of merchantable quality, safe, or fit for its intended use, nor was it adequately tested.

340. PHILIPS N.V. breached its express warranty to the Decedent, in violation of applicable statutes and common law, by manufacturing, marketing, selling the Subject Device to the Decedent and causing damages that will be established a trial.

341. As a proximate result of PHILIPS N.V.'s breach of express warranty, the Decedent developed esophageal cancer and died May 4, 2021.

342.   Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

343.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

344.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

345.   All of the aforementioned damages are due to the conduct of PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 17 – BREACH OF EXPRESS WARRANTY AS TO PHILIPS N.A.

346.   Plaintiff hereby restates and realleges Paragraphs One (1) through Three Hundred and Forty-Five (345) as though fully set forth herein.

347.   At all relevant times, PHILIPS N.A. intended that the Subject Device be used in the manner that the Decedent, in fact, used it, and expressly warranted that it was safe and fit for use by Decedent, that it was of merchantable quality, that

the risks were minimal comparable to other similar or substantially similar devices, and it was adequately tested and fit for its intended use.

348.   At all relevant times, PHILIPS N.A. was aware that consumers, including the Decedent, would use the Subject Device, and as a result, would be in privity with PHILIPS N.A.

349.   The Subject Device was expected to reach, and did, in fact, reach the Decedent without substantial change in the condition in which it was manufactured and sold by PHILIPS N.A.

350.   PHILIPS N.A. warranted that Subject Device would be free from defects of workmanship and materials and would perform in accordance with product specifications "for a period of two years from the date of sale."

351.   PHILIPS N.A. breached the express warranty upon the sale and distribution of the Subject Device.

352.   At the point of sale, the Subject Device, while appearing normal, contained immediate latent defects, as set forth herein, rendering the Subject Device unsuitable and unsafe for use by humans.

353.   In reliance upon PHILIPS N.A.'s express warranty, the Decedent used the Subject Device as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by PHILIPS N.A.

354.    At the time of making such express warranties, PHILIPS N.A. knew or should have known that the Subject Device was not safe and had numerous defects, about many of which PHILIPS N.A. did not actually warn the public, making the Subject Device unreasonably unsafe for its intended purpose.

355.    The Decedent, his physicians, and his healthcare providers relied on the representation in the warranties of PHILIPS N.A. in connection with the use, recommendation, description, or prescription of the Subject Device.

356.    Had the Decedent known the device was unsafe for use, he would not have purchased or used it.

357.    At the time of purchase and throughout his use of the Subject Device, the Decedent reasonably expected that the Subject Device was safe for its ordinary and intended use.

358.    PHILIPS N.A. breached its express warranty to the Decedent, as the Subject Device was not of merchantable quality, safe, or fit for its intended use, nor was it adequately tested.

359.    PHILIPS N.A. breached its express warranty to the Decedent, in violation of applicable statutes and common law, by manufacturing, marketing, selling the Subject Device to the Decedent and causing damages that will be established a trial.

360.   As a proximate result of PHILIPS N.A.'s breach of express warranty, the Decedent developed esophageal cancer and died May 4, 2021.

361.   Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

362.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

363.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

364.   All of the aforementioned damages are due to the conduct of PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 18 – BREACH OF EXPRESS WARRANTY AS TO PHILIPS USA

365.   Plaintiff hereby restates and realleges Paragraphs One (1) through Three Hundred and Sixty-Four (364) as though fully set forth herein.

366. At all relevant times, PHILIPS USA intended that the Subject Device be used in the manner that the Decedent, in fact, used it, and expressly warranted that it was safe and fit for use by Decedent, that it was of merchantable quality, that the risks were minimal comparable to other similar or substantially similar devices, and it was adequately tested and fit for its intended use.

367. At all relevant times, PHILIPS USA was aware that consumers, including the Decedent, would use the Subject Device, and as a result, would be in privity with PHILIPS USA

368. The Subject Device was expected to reach, and did, in fact, reach the Decedent without substantial change in the condition in which it was manufactured and sold by PHILIPS USA

369. PHILIPS USA warranted that Subject Device would be free from defects of workmanship and materials and would perform in accordance with product specifications "for a period of two years from the date of sale."

370. PHILIPS USA breached the express warranty upon the sale and distribution of the Subject Device.

371. At the point of sale, the Subject Device, while appearing normal, contained immediate latent defects, as set forth herein, rendering the Subject Device unsuitable and unsafe for use by humans.

372.   In reliance upon PHILIPS USA's express warranty, the Decedent used the Subject Device as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by PHILIPS USA

373.   At the time of making such express warranties, PHILIPS USA knew or should have known that the Subject Device was not safe and had numerous defects, about many of which PHILIPS USA did not actually warn the public, making the Subject Device unreasonably unsafe for its intended purpose.

374.   The Decedent, his physicians, and his healthcare providers relied on the representation in the warranties of PHILIPS USA in connection with the use, recommendation, description, or prescription of the Subject Device.

375.   Had the Decedent known the device was unsafe for use, he would not have purchased or used it.

376.   At the time of purchase and throughout his use of the Subject Device, the Decedent reasonably expected that the Subject Device was safe for its ordinary and intended use.

377.   PHILIPS USA breached its express warranty to the Decedent, as the Subject Device was not of merchantable quality, safe, or fit for its intended use, nor was it adequately tested.

378. PHILIPS USA breached its express warranty to the Decedent, in violation of applicable statutes and common law, by manufacturing, marketing, selling the Subject Device to the Decedent and causing damages that will be established a trial.

379. As a proximate result of PHILIPS USA's breach of express warranty, the Decedent developed esophageal cancer and died May 4, 2021.

380. Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

381. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

382. Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

383. All of the aforementioned damages are due to the conduct of PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 19 – BREACH OF EXPRESS WARRANTY AS TO PHILIPS R.S.

384.   Plaintiff hereby restates and realleges Paragraphs One (1) through Three Hundred and Eighty-Three (383) as though fully set forth herein.

385.   At all relevant times, PHILIPS R.S. intended that the Subject Device be used in the manner that the Decedent, in fact, used it, and expressly warranted that it was safe and fit for use by Decedent, that it was of merchantable quality, that the risks were minimal comparable to other similar or substantially similar devices, and it was adequately tested and fit for its intended use.

386.   At all relevant times, PHILIPS R.S. was aware that consumers, including the Decedent, would use the Subject Device, and as a result, would be in privity with PHILIPS R.S.

387.   The Subject Device was expected to reach, and did, in fact, reach the Decedent without substantial change in the condition in which it was manufactured and sold by PHILIPS R.S.

388.   PHILIPS R.S. warranted that Subject Device would be free from defects of workmanship and materials and would perform in accordance with product specifications "for a period of two years from the date of sale."

389.   PHILIPS R.S. breached the express warranty upon the sale and distribution of the Subject Device.

390.   At the point of sale, the Subject Device, while appearing normal, contained immediate latent defects, as set forth herein, rendering the Subject Device unsuitable and unsafe for use by humans.

391.   In reliance upon PHILIPS R.S.'s express warranty, the Decedent used the Subject Device as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by PHILIPS R.S.

392.   At the time of making such express warranties, PHILIPS R.S. knew or should have known that the Subject Device was not safe and had numerous defects, about many of which PHILIPS R.S. did not actually warn the public, making the Subject Device unreasonably unsafe for its intended purpose.

393.   The Decedent, his physicians, and his healthcare providers relied on the representation in the warranties of PHILIPS R.S. in connection with the use, recommendation, description, or prescription of the Subject Device.

394.   Had the Decedent known the device was unsafe for use, he would not have purchased or used it.

395.   At the time of purchase and throughout his use of the Subject Device, the Decedent reasonably expected that the Subject Device was safe for its ordinary and intended use.

396. PHILIPS R.S. breached its express warranty to the Decedent, as the Subject Device was not of merchantable quality, safe, or fit for its intended use, nor was it adequately tested.

397. PHILIPS R.S. breached its express warranty to the Decedent, in violation of applicable statutes and common law, by manufacturing, marketing, selling the Subject Device to the Decedent and causing damages that will be established a trial.

398. As a proximate result of PHILIPS R.S.'s breach of express warranty, the Decedent developed esophageal cancer and died May 4, 2021.

399. Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

400. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

401. Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

402. All of the aforementioned damages are due to the conduct of PHILIPS R.S. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT 20 – NEGLIGENT MANUFACTURING AS TO PHILIPS N.V.

403.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Two (402) as though fully set forth herein.

404.   At all relevant times, PHILIPS N.V. designed, manufactured, assembled, inspected, tested (or failed to test), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the recalled devices, including the Subject Device used by the Decedent.

405.   PHILIPS N.V. had a duty to use exercise reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device.

406.   PHILIPS N.V. knew or, by the exercise of reasonable care, should have known, that the Subject Device was manufactured, assembled, inspected, and packaged in a manner that was dangerous, harmful and injurious when used by consumers, like the Decedent, in a reasonably foreseeable manner.

407.   PHILIPS N.V. knew or, by the exercise of reasonable care, should have known, ordinary consumers, including the Decedent, would not have realized the

potential risks and dangers posed by the Subject Device due to improper manufacturing, assembling, inspecting, and packaging.

408. Without limitation, PHILIPS N.V. breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the recalled devices, including the Subject Device, by their:

        a.     failure to follow Good Manufacturing Practices ("GMPs"),

        b.     failure to adequately inspect/test the recalled devices during the manufacturing process,

        c.     failure to adequately determine/test the integrity of PE-PUR foam and its qualities, especially after the devices have aged, and

        d.     failure to adequately determine/test the purity of airflow through the recalled devices' airway, especially after the devices have aged.

409. A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their devices.

410. Plaintiffs were injured as a direct and proximate result of the failure of PHILIPS N.V. to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device as described herein.

411.   PHILIPS N.V.'s negligent manufacturing, assembling, inspecting, and packaging of the Subject Device was a substantial factor in causing Plaintiff's harms.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT 21 – NEGLIGENT MANUFACTURING AS TO PHILIPS N.A.

412.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Eleven (411) as though fully set forth herein.

413.   At all relevant times, PHILIPS N.A. designed, manufactured, assembled, inspected, tested (or failed to test), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the recalled devices, including the Subject Device used by the Decedent.

414.   PHILIPS N.A. had a duty to use exercise reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device.

415.   PHILIPS N.A. knew or, by the exercise of reasonable care, should have known, that the Subject Device was manufactured, assembled, inspected, and packaged in a manner that was dangerous, harmful and injurious when used by consumers, like the Decedent, in a reasonably foreseeable manner.

72

416.   PHILIPS N.A. knew or, by the exercise of reasonable care, should have known, ordinary consumers, including the Decedent, would not have realized the potential risks and dangers posed by the Subject Device due to improper manufacturing, assembling, inspecting, and packaging.

417.   Without limitation, PHILIPS N.A. breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the recalled devices, including the Subject Device, by their:

      e.     failure to follow Good Manufacturing Practices ("GMPs"),

      f.     failure to adequately inspect/test the recalled devices during the manufacturing process,

      g.     failure to adequately determine/test the integrity of PE-PUR foam and its qualities, especially after the devices have aged, and

      h.     failure to adequately determine/test the purity of airflow through the recalled devices' airway, especially after the devices have aged.

418.   A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their devices.

419.   Plaintiffs were injured as a direct and proximate result of the failure of PHILIPS N.A. to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device as described herein.

420.   PHILIPS N.A.'s negligent manufacturing, assembling, inspecting, and packaging of the Subject Device was a substantial factor in causing Plaintiff's harms.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT 22 – NEGLIGENT MANUFACTURING AS TO PHILIPS USA

421.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Twenty (420) as though fully set forth herein.

422.   At all relevant times, PHILIPS USA designed, manufactured, assembled, inspected, tested (or failed to test), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the recalled devices, including the Subject Device used by the Decedent.

423.   PHILIPS USA had a duty to use exercise reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device.

424.   PHILIPS USA knew or, by the exercise of reasonable care, should have known, that the Subject Device was manufactured, assembled, inspected, and

packaged in a manner that was dangerous, harmful and injurious when used by consumers, like the Decedent, in a reasonably foreseeable manner.

425. PHILIPS USA knew or, by the exercise of reasonable care, should have known, ordinary consumers, including the Decedent, would not have realized the potential risks and dangers posed by the Subject Device due to improper manufacturing, assembling, inspecting, and packaging.

426. Without limitation, PHILIPS USA breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the recalled devices, including the Subject Device, by their:

    i.    failure to follow Good Manufacturing Practices ("GMPs"),

    j.    failure to adequately inspect/test the recalled devices during the manufacturing process,

    k.    failure to adequately determine/test the integrity of PE-PUR foam and its qualities, especially after the devices have aged, and

    l.    failure to adequately determine/test the purity of airflow through the recalled devices' airway, especially after the devices have aged.

427. A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their devices.

428. Plaintiffs were injured as a direct and proximate result of the failure of PHILIPS USA to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device as described herein.

429. PHILIPS USA's negligent manufacturing, assembling, inspecting, and packaging of the Subject Device was a substantial factor in causing Plaintiff's harms.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT 23 – NEGLIGENT MANUFACTURING AS TO PHILIPS R.S.

430. Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Twenty-Nine (429) as though fully set forth herein.

431. At all relevant times, PHILIPS R.S. designed, manufactured, assembled, inspected, tested (or failed to test), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the recalled devices, including the Subject Device used by the Decedent.

432. PHILIPS R.S. had a duty to exercise reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device.

433. PHILIPS R.S. knew or, by the exercise of reasonable care, should have known, that the Subject Device was manufactured, assembled, inspected, and

packaged in a manner that was dangerous, harmful and injurious when used by consumers, like the Decedent, in a reasonably foreseeable manner.

434.   PHILIPS R.S. knew or, by the exercise of reasonable care, should have known, ordinary consumers, including the Decedent, would not have realized the potential risks and dangers posed by the Subject Device due to improper manufacturing, assembling, inspecting, and packaging.

435.   Without limitation, PHILIPS R.S. breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the recalled devices, including the Subject Device, by their:

      m.    failure to follow Good Manufacturing Practices ("GMPs"),

      n.    failure to adequately inspect/test the recalled devices during the manufacturing process,

      o.    failure to adequately determine/test the integrity of PE-PUR foam and its qualities, especially after the devices have aged, and

      p.    failure to adequately determine/test the purity of airflow through the recalled devices' airway, especially after the devices have aged.

436.   A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their devices.

437.    Plaintiffs were injured as a direct and proximate result of the failure of PHILIPS R.S. to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device as described herein.

438.    PHILIPS R.S.'s negligent manufacturing, assembling, inspecting, and packaging of the Subject Device was a substantial factor in causing Plaintiff's harms.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this court deems just and proper.

## COUNT 24 – BREACH OF IMPLIED WARRANTY AS TO PHILIPS N.V.

439.    Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Thirty-Eight (438) as though fully set forth herein.

440.    At all relevant times, PHILLIPS N.V. was a merchant with respect to the recalled devices they designed, manufactured, and sold to consumers, including the Decedent.

441.    PHILLIPS N.V. failed to comply with merchantability requirements, as the recalled devices did not achieve the ordinary purposes for which they were advertised, namely a healthy treatment option for respiratory conditions such as sleep apnea.

442. Beyond PHILLIPS N.V.'s own direct sales of the recalled devices, Plaintiff and other consumers are third-party beneficiaries of PHILLIPS N.V.'s agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the recalled devices, including the Subject Device, to consumers.

443. Additionally, consumers, such as the Decedent, are the intended beneficiaries of PHILLIPS N.V.'s implied warranties, since the recalled devices are manufactured with the express intended purpose of being sold to consumers.

444. As a direct and proximate result of PHILLIPS N.V.'s breach of its implied warranty of merchantability regarding the Subject Device, the Decedent developed cancer and died on May 4, 2021.

445. As a proximate result of PHILLIPS N.V.'s breach of implied warranty of merchantability, the Decedent developed esophageal cancer and died May 4, 2021.

446. Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

447. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

448.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

449.   All of the aforementioned damages are due to the conduct of PHILIPS N.V. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 25 – BREACH OF IMPLIED WARRANTY AS TO PHILIPS N.A.

450.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Forty-Nine (449) as though fully set forth herein.

451.   At all relevant times, PHILLIPS N.A. was a merchant with respect to the recalled devices they designed, manufactured, and sold to consumers, including the Decedent.

452.   PHILLIPS N.A. failed to comply with merchantability requirements, as the recalled devices did not achieve the ordinary purposes for which they were advertised, namely a healthy treatment option for respiratory conditions such as sleep apnea.

453.   Beyond PHILLIPS N.A.'s own direct sales of the recalled devices, Plaintiff and other consumers are third-party beneficiaries of PHILLIPS N.A.'s

agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the recalled devices, including the Subject Device, to consumers.

454.   Additionally, consumers, such as the Decedent, are the intended beneficiaries of PHILLIPS N.A.'s implied warranties, since the recalled devices are manufactured with the express intended purpose of being sold to consumers.

455.   As a direct and proximate result of PHILLIPS N.A.'s breach of its implied warranty of merchantability regarding the Subject Device, the Decedent developed cancer and died on May 4, 2021.

456.   As a proximate result of PHILLIPS N.A.'s breach of implied warranty of merchantability, the Decedent developed esophageal cancer and died May 4, 2021.

457.   Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

458.   The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

459.   Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

460. All of the aforementioned damages are due to the conduct of PHILIPS N.A. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 26 – BREACH OF IMPLIED WARRANTY AS TO PHILIPS USA

461. Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Sixty (460) as though fully set forth herein.

462. At all relevant times, PHILLIPS USA was a merchant with respect to the recalled devices they designed, manufactured, and sold to consumers, including the Decedent.

463. PHILLIPS USA failed to comply with merchantability requirements, as the recalled devices did not achieve the ordinary purposes for which they were advertised, namely a healthy treatment option for respiratory conditions such as sleep apnea.

464. Beyond PHILLIPS USA's own direct sales of the recalled devices, Plaintiff and other consumers are third-party beneficiaries of PHILLIPS USA's agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the recalled devices, including the Subject Device, to consumers.

465.    Additionally, consumers, such as the Decedent, are the intended beneficiaries of PHILLIPS USA's implied warranties, since the recalled devices are manufactured with the express intended purpose of being sold to consumers.

466.    As a direct and proximate result of PHILLIPS USA's breach of its implied warranty of merchantability regarding the Subject Device, the Decedent developed cancer and died on May 4, 2021.

467.    As a proximate result of PHILLIPS USA's breach of implied warranty of merchantability, the Decedent developed esophageal cancer and died May 4, 2021.

468.    Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

469.    The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

470.    Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

471.    All of the aforementioned damages are due to the conduct of PHILIPS USA as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 27 – BREACH OF IMPLIED WARRANTY AS TO PHILIPS R.S.

472. Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Seventy-One (471) as though fully set forth herein.

473. At all relevant times, PHILLIPS R.S. was a merchant with respect to the recalled devices they designed, manufactured, and sold to consumers, including the Decedent.

474. PHILLIPS R.S. failed to comply with merchantability requirements, as the recalled devices did not achieve the ordinary purposes for which they were advertised, namely a healthy treatment option for respiratory conditions such as sleep apnea.

475. Beyond PHILLIPS R.S.'s own direct sales of the recalled devices, Plaintiff and other consumers are third-party beneficiaries of PHILLIPS R.S.'s agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the recalled devices, including the Subject Device, to consumers.

476. Additionally, consumers, such as the Decedent, are the intended beneficiaries of PHILLIPS R.S.'s implied warranties, since the recalled devices are manufactured with the express intended purpose of being sold to consumers.

477. As a direct and proximate result of PHILLIPS R.S.'s breach of its implied warranty of merchantability regarding the Subject Device, the Decedent developed cancer and died on May 4, 2021.

478. As a proximate result of PHILLIPS R.S.'s breach of implied warranty of merchantability, the Decedent developed esophageal cancer and died May 4, 2021.

479. Plaintiff, the wife of Decedent has lost care, comfort consortium, companionship, services, instruction, guidance, council, training, support, and pecuniary support as a result of the death of her husband.

480. The Decedent suffered extreme pain and suffering, underwent medical treatment, and incurred medical expenses from the date he developed cancer until the date he died.

481. Further, Plaintiff has incurred funeral expenses as a result of the death of the Decedent.

482. All of the aforementioned damages are due to the conduct of PHILIPS R.S. as set forth above.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 28 – LOSS OF CONSORTIUM AS TO PHILIPS N.V.

483.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Eighty-Two (482) as though fully set forth herein.

484.   At all times material hereto, Plaintiff, KIMBERLY TEAGARDEN-HARD, was the wife of the Decedent, JOHN JEFFREY HARD.

485.   As a direct and proximate result of the negligent, reckless, and/or intentional actions and/or inactions of PHILIPS N.V. described herein, Plaintiff has suffered a loss of the consortium, society, affections, and services of her husband and will continue to suffer from said losses in the future.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.V. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 39 – LOSS OF CONSORTIUM AS TO PHILIPS N.A.

486.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Eighty-Five (485) as though fully set forth herein.

487.   At all times material hereto, Plaintiff, KIMBERLY TEAGARDEN-HARD, was the wife of the Decedent, JOHN JEFFREY HARD.

488.   As a direct and proximate result of the negligent, reckless, and/or intentional actions and/or inactions of PHILIPS N.A. described herein, Plaintiff has suffered a loss of the consortium, society, affections, and services of her husband and will continue to suffer from said losses in the future.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS N.A. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 30 – LOSS OF CONSORTIUM AS TO PHILIPS USA

489.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Eighty-Eight (488) as though fully set forth herein.

490.   At all times material hereto, Plaintiff, KIMBERLY TEAGARDEN-HARD, was the wife of the Decedent, JOHN JEFFREY HARD.

491.   As a direct and proximate result of the negligent, reckless, and/or intentional actions and/or inactions of PHILIPS USA described herein, Plaintiff has suffered a loss of the consortium, society, affections, and services of her husband and will continue to suffer from said losses in the future.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS USA in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT 31 – LOSS OF CONSORTIUM AS TO PHILIPS R.S.

492.   Plaintiff hereby restates and realleges Paragraphs One (1) through Four Hundred and Ninety-One (491) as though fully set forth herein.

493.   At all times material hereto, Plaintiff, KIMBERLY TEAGARDEN-HARD, was the wife of the Decedent, JOHN JEFFREY HARD.

494.   As a direct and proximate result of the negligent, reckless, and/or intentional actions and/or inactions of PHILIPS R.S. described herein, Plaintiff has suffered a loss of the consortium, society, affections, and services of her husband and will continue to suffer from said losses in the future.

**WHEREFORE**, Plaintiff seeks judgment against PHILIPS R.S. in an amount that is fair and reasonable, but in excess of $75,000.00, for compensatory and punitive damages, together with interest, costs incurred, attorney's fees, and for such other and further relief as this Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was serviced via service of process to all interested parties.

Respectfully Submitted,

*/s/M. Brad Gibson*

**M. BRAD GIBSON**
McGrath Gibson, LLC
Fla. Bar No.: 470708
6117 Atlantic Boulevard
Jacksonville, FL 32211
P: (904) 358-3300
F: (904) 358-3390
E: <u>eservice@learnyourrights.com</u>